## AGNEW v. ADAMS.

1. As against debts contracted prior to the Constitution of 1868, an assignment of homestead is a nullity.
2. A sheriff's sale of land under an execution, having no lien, will be valid, if there be at the time in his office an execution having lien.
3. In charging the jury that this principle was correct, if the holder of the unsatisfied execution had not abandoned his claim or waived his right, and in leaving this question to the jury without further explanation, the presiding judge in this case erred.
4. Where executions having no lien upon a homestead are levied upon a tract of land, of which the homestead is a part, and the whole is sold, the homestead will pass under such sale, if there then be in the Sheriff's office, an execution having lien upon such homestead, although it was not levied, was unknown to the purchaser, and no special orders had been given by its owner for its enforcement, McGowan, A. J. *dissenting*.
5. An agreement that the evidence taken at the first trial, shall be used as evidence at the second trial, and "no further oral testimony to be introduced," does not prevent the introduction of a judgment and execution not in evidence at the first trial.
6. A record offered in evidence, properly excluded, as either irrelevant or else as intended to show the validity of a judgment, which the Supreme Court, on a former appeal in this cause had declared to be invalid.

Before PRESSLEY, J., Richland, July, 1881.

This is a second appeal of the case reported, 15 *S. C.* 36, action by *Thomas Agnew* v. *Robert Adams.* At the second trial the following agreement was signed by the attorneys of record.

It is agreed that the testimony given on the former trial, as stated in the brief for the Supreme Court, subject to the objections and exceptions therein taken, shall be the evidence on the new trial. Plaintiff to be at liberty to introduce the records in the cases in which judgments obtained against defendant were introduced on the former trial, and to be at liberty to offer in evidence record in case *D. Crawford & Sons, John Agnew, Sr., & Son, and John Agnew, Jr., plaintiffs* v. *Robert Adams, Amie A. Weston, James P. Adams, and Jesse E. Dent, Sheriff.* Defendants to have leave to object to it. The defendant to have permission to produce the original return and assignment of homestead of the appraisers referred to as lost at f. 34, the execution of which is admitted. No further oral testimony to be introduced.

Accordingly the evidence at the former trial was introduced at this. The plaintiff then offered in evidence under the aforesaid agreement between counsel from the Common Pleas of Richland County, the record in the case of *D. Crawford & Sons, John Agnew & Son, and John Agnew, Jr., plaintiffs* v. *Robert Adams, Amie A. Weston, James P. Adams and Jesse E. Dent, Sheriff of Richland County, defendants,* stating to the Court that the said record would show that the *res litigata,* as well as the *res judicata,* the point in issue as well as the point decided therein, was the validity of the judgment of *Amie A. Weston* v. *Robert Adams,* and that it was therein decided, ordered, adjudged and decreed that the said judgment was valid, the same being done in a proper suit between proper parties, brought for the express purpose of testing its existence and validity and binding upon Robert Adams. The defendants' attorneys objected on divers grounds. His Honor ruled this record inadmissible, to which ruling plaintiff duly excepted.

The plaintiff next introduced in evidence the record in the case of *F. W. McMaster, Administrator* v. *John P. Adams*

*and Robert Adams.* The cause of action therein arose prior to the adoption of the Constitution of 1868, being a bond for the payment of money, dated December 1, 1853, judgment regularly obtained in open court, dated May 11, 1874, for $4727.25, the penalty of the bond being for $4700 and $27.25 being the costs and disbursements. This was the only judgment of this plaintiff against Robert Adams. The execution therein was of active energy at the time of the sale by the sheriff, and the levy thereunder on the lands in dispute in this suit was regularly made and endorsed thereon before or about the time the homestead was assigned, which levy was never renewed. Defendant's attorneys objected to this judgment and executions being received in evidence: Because, by agreement of counsel, none other than the judgments and executions offered and received on the former trial were to be offered in this, and that the record showed this was altogether a different case. His Honor overruled this objection unless the defendant could show another judgment of *McMaster* v. *Robert Adams.*

The defendant introduced in evidence the original assignment, of which a copy is contained in his answer, which had never had any plan annexed to it, so far as could be ascertained by inspection.

The presiding Judge charged the jury that, under the decision of the Supreme Court, the judgments of James P. Adams and Amie A. Weston, and the executions based thereon did not bind the homestead, and, therefore, as there was no valid sale of the land under them, were out of the case and not to be considered by the jury; to which plaintiff duly excepted. He also charged the jury that: "A question is raised as to the assignment not having been recorded according to law. I will now give you and all parties a chance to decide it flatly. A marriage settlement is declared by law to be totally void unless recorded within a certain time; yet the Courts have decided that it is good between the parties though not recorded. The Courts, in other words, have decided that recording is not necessary between the parties, provided they have actual notice. I charge you that this assignment did not

lose its validity by reason of any defect in the recording; and I further charge you that a defect in the recording, not attributable to the debtor, would not invalidate it. I go further and charge you that, where the parties to a proceeding in Court do everything which is required of them, no neglect by a public officer can deprive them of their legal rights. In this case the homestead was assigned after a levy and advertisement under these executions, and Colonel Wallace, according to the testimony, forbade the sale of the homestead. I charge you that this was actual notice. I also charge you that, if necessary, the assignment has been sufficiently recorded." To which plaintiff then and there excepted.

His Honor refused to charge the jury, as requested by plaintiff, "That, no matter what may have been the relative rank of F. W. McMaster, administrator, judgment and execution, or what may be the proper distribution of the proceeds of the sale or the rights between F. W. McMaster, administrator, and the plaintiff-purchaser, the plaintiff as purchaser took title from the Sheriff, valid against the defendant judgment debtor, and must recover against the judgment debtor if the jury find as a fact that the cause of action in McMaster's case arose prior to the Constitution of 1868 and the executions and levies were as stated in the brief for the Supreme Court." He however charged that the preceding request would be "allowed if McMaster had not abandoned his claim or waived his right, and if the Sheriff proceeded under his execution." To which charge and refusal the plaintiff duly excepted.

His Honor refused to charge the jury, as requested by plaintiff: "That if the Sheriff had in his office, at the time of sale, the F. W. McMaster, administrator, judgment and execution, and the same constituted a lien on the defendant's homestead, the sale will be referred to them and the plaintiff be entitled to the land in controversy under the Sheriff's deed." He however charged that the preceding request would be allowed unless the jury believed, from the circumstances, that McMaster had abandoned his claim and waived his right. To which charge and refusal plaintiff duly excepted.

His Honor charged the jury "that if McMaster gave orders not to sell, or in any manner abandon his claim under his judgment after the homestead was assigned, and if the jury believed that, after said claim had been withdrawn, the sale was made, as testified by sheriff, only under the judgments of Mrs. Weston and J. P. Adams, then such sale would not give the purchaser a valid title to the homestead. In such case the sale could not be referred to the judgment of McMaster if his claim had been withdrawn or abandoned. That a creditor whose judgment was not a lien on homestead could not, by including it in a sale of land which was bound by his judgment, thereby sacrifice the rights of a creditor whose judgment was a lien on the homestead." To this plaintiff duly excepted.

His Honor charged the jury " that a senior judgment creditor affected by homestead assignment has no right to have a sale made except by co-operation or assent of the junior judgment creditor who has a lien on the homestead." To which plaintiff duly excepted.

Verdict was for defendant. Plaintiff moved for a new trial and that being refused, appealed to this Court on the exceptions above noted.

Messrs. *Bachman & Youmans,* for appellant.

Messrs. *Bacon & Moore,* contra.

May 30, 1882. The opinion of the Court was delivered by

MR. CHIEF JUSTICE SIMPSON. This is a contest over a tract of land lying in Richland County, containing some 200 acres, claimed by the plaintiff appellant as a purchaser at sheriff's sale, and resisted by the defendant respondent on the ground of homestead.

It appears that in 1874 the real estate of respondent, situate in said county, embracing 902 acres, was levied upon by the Sheriff by virtue of sundry fi-fas then in his office. The respondent claimed a homestead, and the Sheriff caused to be assigned to him the 200 acres now in dispute. Upon the interposition of this claim of homestead the sale was postponed in fact, it seems that an injunction was obtained restraining the

sale. Some time after this, to wit, on February 10th, 1878, two of the judgment creditors assigned their judgments to John Agnew, Jr., who, claiming that these judgments were founded on debts contracted before the adoption of the Constitution of 1868, and therefore under a recent decision not subject to the Homestead provision therein, ordered the Sheriff to proceed to execute. The Sheriff thereupon readvertised and sold, the appellant being the purchaser at the bid of $225. At this sale the attorney of respondent gave notice of the assignment of homestead as above, and forbade the sale.

This action was then commenced by the appellant, to wit, on September 30, 1878. At the trial a verdict was rendered for the appellant, but upon appeal to this Court, the judgment was reversed and the case remanded. (15 *S. C.* 36.) This reversal was upon the ground that the Sheriff had no authority to sell the homestead under the two judgments by virtue of which he had acted, because as to the first, to wit, the Amie Weston judgment, it was a nullity, having been rendered by the Clerk of the Court after the Act of 1873; and as to the other, the James P. Adams judgment, the debt was contracted after the adoption of the Constitution of 1868—the Court holding that neither of these judgments had liens upon the land. The Court also held that that there was no fatal defect in the assignment of the homestead; that the act had been substantially complied with, and as to the two judgments of appellant the assignment was sufficient.

Upon the second trial, from which this appeal comes, the same testimony was offered as upon the first, with the addition, on the part of the plaintiff, of the introduction of a judgment and *fi-fa* in favor of F. W. McMaster for $4,727.25, dated May 11, 1874. This judgment was junior to the judgments under which the Sheriff acted, but it was founded on a debt admitted to have been contracted before the homestead provisions. This judgment raises the important question involved in the appeal, to wit: Did it legalize the sale by the Sheriff of defendant's homestead? The appellant's attorney requested the Judge to charge that it did, " provided the jury found as a fact that the cause of action therein arose prior to the Con-

24

stitution of 1868, and the executions and levies were as stated in the [former] brief for the Supreme Court." His Honor Judge Pressley charged as requested, " provided McMaster had not abandoned his claim, or waived his right, and had proceeded under his execution."

The request of appellant was no doubt founded upon *Bull* v. *Rowe*, 13 *S. C.* 360. In that case this Court held, after a full and exhaustive examination of the law of homestead in this State, that the Constitution of 1868 upon this subject must be read as if no part applied to debts contracted before its adoption; that a debtor could not claim a homestead as to such debts *by virtue* of such constitutional provision, or by any subsequent acts passed thereunder. Previous to *Bull* v. *Rowe*, it had been decided in this State that an assignment of homestead, where it had been returned for record, was invalid as to old debts. *Choice* v. *Charles*, 7 *S. C.* 171; *Ryan* v. *Pettigrew*, 7 *S. C.* 146. But *Bull* v. *Rowe* went still further, and held that the whole proceeding was void, and that no homestead as such *per se* could be allowed in such cases, because there was no constitutional provision or act (under the principle held in *Gunn* v. *Barry*, 15 *Wall.* 610; *Cochran* v. *Darcy*, 5 *S. C.* 125; *ex-parte Hewett*, 5 *S. C.* 409), which exempted any species of property from levy and sale as to such debts—quoting from Thompson, § 230, as follows: " It is scarcely necessary to say as a general rule, that a dedication of homestead in whatever form, does not have the effect of withdrawing it from liability on account of any pre-existing debt, lien, conveyances, or charges which otherwise would have bound the land;" also § 29 : " Every debt created by contract prior to the passage of any homestead or exemption law is *privileged* from the operation of such law. To this rule, as the writer understands it, the Court can now admit no exception."

In the case of *Newton* v. *Sumning*, 59 *Ga.* 399, it is said: " Those whose claims outrank the constitution may stay out of the Ordinary's Court, and nothing there done will be in their way." Under this principle, there can be no such thing as a homestead *per se* assigned against a debt pre-existing the Con-

stitution of 1868, by virtue of any constitutional provision or act of the General Assembly passed thereunder *proprio vigore.*

The next question is, was the land in dispute sold by the Sheriff under the McMaster judgment? Under *Bull* v. *Rowe* and the other cases cited, the assignment of the homestead in 1874 was a nullity as to McMaster's judgment, it being founded on a pre-existing debt. But the question now is, has that judgment been enforced, and was the land sold thereunder by the Sheriff at the sale in 1878? The land was advertised for sale in 1878 under but two executions—the Amie Weston and James P. Adams executions. The deed of the Sheriff recites the Amie Weston execution alone, but the advertisement recites them both. At the time of the levy and the sale, the McMaster execution was in the office of the Sheriff with active energy. Now, with these facts above considered could the sale be legally referred to the McMaster execution? Such was the decision in the cases of *Gist* v. *McJunkin et al.* 1 *McM.* 342; *McKnight* v. *Gordon*, 13 *Rich. Eq.* 246, and *Vance* v. *Red*, 2 Spears, 90.

In *Gordon* v. *McKnight* Chancellor Inglis said for the Court: "But there were in the Sheriff's hands at the time of the levy and sale sundry other executions against the mortgagor. The Sheriff's official acts in the levy and sale, and the deed made in pursuance thereof will not be made void by his referring them to a power and authority which he has not, if they can be supported by any power and authority which he in fact has. To such actual power and authority the law will refer them," citing *Gist* v. *McJunkin, supra.* In *Vance* v. *Red, supra,* the property was sold under a *fi-fa* which in fact had no lien; yet the sale was referred to an unsatisfied *fi-fa* in the hands of the Sheriff, although "Wait orders" had been indorsed thereon.

So that, the law in our State seems to be, that where the Sheriff has in his office an unsatisfied *fi-fa* having lien, his sale of such property will be valid, although the levy and advertisement originate as matter of fact from a *fi-fa* having no such lien. In *Vance* v. *Red* the property had been sold by the

debtor before the *fi-fa* under which it was levied had been entered in the Sheriff's office, and therefore free from lien, yet the sale was referred to an older *fi-fa* which did have lien, although "Wait orders" had been indorsed on said older *fi-fa* (See *Greenwood* v. *Naylor*, 1 *McC.* 414, and *Snipes* v. *Sheriff of Charleston*, 1 *Bay.* 295.) This principle, however, was not denied by the Circuit Judge; he conceded it to be the law, but charged that it did not apply in this case. "If McMaster had waived his rights, or had not proceeded under his *fi-fa*," and he left it to the jury inferentially, if not directly to determine whether this was so. The real question then is, Did the Judge err in attaching these qualifications to the general principle?

There is no doubt as to the proposition that a party may waive almost any right. He may not only waive a right, but he may affirm a nullity. He may do this not only expressly by words, but by conduct. As was said by McGowan, A. J., in *Bull* v. *Rowe, supra:* "The doctrine of estoppel applies to constitutional as well as other rights, and to proceedings absolutely void as well as those merely voidable. So that the first qualification which the Judge attached to the general rule, as an abstract proposition, was not erroneous. As applied to this case, however, we think it needed some explanation. "If estoppel by conduct is relied on, it must appear that it induced action, the disavowal of which would be inequitable, and which, therefore, the party who holds out the inducements is estopped from disavowing." *Bigelow on Estoppel*, 480; *Bull* v. *Rowe, supra.* There is no estoppel without fault to the injury of another. *Ibid.* These qualifications, we think, might and should have been attached to the proposition charged by the Judge, that the principle contended for by appellant would be allowed "if McMaster had not abandoned his claim or waived his right," especially as this condition was superadded to the request, and there was no evidence in the case of an express waiver by McMaster of his rights.

But the Judge further charged, in effect, that even though McMaster had not abandoned his claim or waived his rights, yet the sale by the Sheriff could not be referred to his *fi-fa* unless it appeared that the Sheriff had proceeded under it.

This, we think, was error. The cases cited above hold that where there is a valid *fi-fa* in the office having lien upon the property, whether the party plaintiff or the Sheriff has actually proceeded under it or not, the sale may be referred to it and such sale will be valid. *Vance* v. *Red, supra*.

We see nothing in the agreement as to the admission of testimony which excludes the introduction of the McMaster judgment. Nor do we find any error in excluding the record in the cases of Crawford & Sons, John Agnew & Son, and John Agnew, Jr., against Robert Adams and others. This record was intended to show that as between the parties to the said record, the judgment of Amie Weston against Robert Adams was valid. In the former appeal in this case, this Court had decided expressly that the Amie Weston judgment, as applicable to this action was invalid, and that the plaintiff could found no right thereon. If the purpose of its introduction on the second trial was to ground a right to plaintiff in conflict with the former opinion of this Court, it was properly excluded. If it was to establish an abstract proposition in no way affecting the question, it was irrelevant, and its exclusion was not error.

We do not understand the pertinency of the third exception, as to the recording of the assignment of the homestead and the plot. In the former opinion it was understood that the assignment had been returned for record, and had been recorded, but that the plot, though left in the Clerk's office, had not been recorded. Upon these facts, the Court held the assignment valid, at least as to the debts then before the Court subject to homestead exemption. We understand that Judge Pressley's ruling went to the extent that where a debtor is entitled to a homestead, the recording of the assignment is not absolutely necessary, as between the parties, provided they have actual notice. This case does not depend upon the question whether the assignment of the homestead was in form and according to the terms of the act, but whether the debtor was entitled to a homestead—not whether it was set off regularly, but whether he had the right to have it set off at all. Such being the fact, we do not regard the question raised in this ex-

ception as properly in the case, and therefore we express no opinion in reference to it. We have already said in the former opinion that there was no objection to the homestead on the ground of the want of formality in the assignment, or the failure to record the plot.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, on account of error in the charge of the Judge in reference to the McMaster judgment and *fi-fa,* and that the case be remanded for a new trial.

MR. JUSTICE McGOWAN, *dissenting.* I concur with the majority of the court in the opinion which has just been pronounced except as to so much of it as holds that the sale by the supposed authority of the executors of Amie A. Weston, assignee, and James P. Adams, which were incorporated in the homestead, must be referred to the execution of F. W. McMaster, which appears to have been recovered on a cause of action older than the constitution, and which happened to be in the Sheriff's office at the time of the sale; although the homestead had been assigned under that execution and no instructions had been given by McMaster, the plaintiff, to proceed under it against the homestead, and even its existence at the time of the sale as an execution which could reach the homestead was unknown both to the Sheriff and Agnew, the purchaser.

In October, 1870, there were in the Sheriff's office of Richland County, several executions against Robert Adams, viz: *T. P. Weston, Guardian* v. *Robert Adams,* February 3, 1874; *Glenn A. Kaminer* v. *Robert Adams,* February 6, 1874; *James P. Adams* v. *Robert Adams,* February 6, 1874; *F. W. McMaster* v. *Robert Adams,* February 11, 1874; and several others of the same date. These executions were all levied upon the property of Robert Adams, who claimed homestead, and in January, 1875, the Sheriff issued his warrant, naming all the executions except that of Weston, which had been assigned to Amie A. Weston, to lay off homestead for the defendant Adams, which was done by commissioners appointed for that purpose. At that time none of the creditors

objected to homestead, but after the decision of this court de-
claring that the provisions of the constitution and laws which
purported to allow homestead as to debts older than the con-
stitution were void, it was claimed that two judgments against
Robert Adams has been rendered *on such contracts* and as
against them the assignment of homestead could not stand.
These were the judgments of Amie A. Weston, assignee, and
James P. Adams, which were purchased by John Agnew, Sr.,
who had them specially levied upon the homestead, and the
advertisement of the Sheriff declared that it would be sold
under these executions alone. Notwithstanding objection by
Adams, the Sheriff sold according to his notice. The plaintiff
Agnew, became the purchaser, took Sheriff's deed reciting that
the sale was made under the execution of Amie A. Weston,
assignee, and brought this action against Robert Adams for
the homestead. He recovered a verdict, but upon appeal to
this court it was set aside and a new trial granted on the
ground *that as to homestead* the executions of Weston and
Adams, under which it was sold, were inoperative and con-
ferred no authority upon the Sheriff *to sell, and therefore no
title was conveyed to the purchaser.*

At the new trial ordered it was discovered that among the
cases under which the homestead was assigned and which were
lying dormant in the Sheriff's office, there was one, that of
F. W. McMaster as administrator, which had been recovered
upon a cause of action older than the constitution, and it was
then for the first time urged that although the deed from the
Sheriff under the executions of Weston and Adams, by autho-
rity of which the homestead had been sold, were void for the
reason that the Sheriff had no right to sell the homestead un-
der these executions, yet that it must be held valid by refer-
ring the sale to McMaster's execution, although the plaintiff
McMaster had not directed it to be levied upon the home-
stead, and as a matter of fact was not so levied, or at the time
of sale even known to exist as an execution which could reach
the homestead.

The Circuit Judge charged the jury, " That if McMaster
gave orders not to sell or in any manner abandoned his action

under his judgment after the homestead was assigned, and if the jury believed that after said claim had been withdrawn, the sale was made as testified by the Sheriff, only under the judgments of Miss Weston and J. P. Adams, then such sale would not give the purchaser a valid title to the homestead. In such case the sale would not be referred to the judgment of Mc-Master, if his claim had been withdrawn or abandoned. That a creditor whose judgment was not a lien on the homestead, could not by including it in a sale of land which was bound by his judgment thereby sacrifice the rights of a creditor whose judgment was a lien on the homestead," etc. Under this charge the jury found for the defendant and the question is whether it was error. It is undoubtedly true that the Sheriff could derive no authotity to levy and sell from executions which were either satisfied in fact, or as to the homestead were inoperative. *Hunter* v. *Stevenson,* 1 *Hill.* 415; *Thrower* v. *Vaughan,* 1 *Rich.* 18; *Mouchat* v. *Brown,* 3 *Rich.* 117.

As was said by Judge Butler in the case of *Thrower* v. *Vaughan,* "The doctrine as recognized in the case of *Hunter* v. *Stevenson,* seems to be this, that every execution unsatisfied on the face of it is *prima facie* authority to sell, but this, as Mr. Justice O'Neall remarks, may be rebutted by the defendant. He may show that before the sale the execution was paid and thereby the Sheriff's authority to sell was ended. Satisfaction in fact must be regarded as the termination of the authority of a Sheriff to act under legal process, so far as he may have acquired a right under it to convey title to another. No conveyance can be good which rests upon that which is null and void." Mr. Freeman also on the same subject says, "A void judgment is in legal effect no judgment. By it no rights are divested. From it no rights are obtained. Being worthless itself, all proceedings based upon it are equally worthless. It neither binds nor bars any one." It is plain therefore that, as decided in the former judgment in this case, the executions of Mrs. Weston and J. P. Adams being entirely inoperative as to the homestead, could give no authority to the Sheriff to levy and sell it to another. "No conveyance can be good which rests upon that which is null and void."

But it is urged for the plaintiff that the sale, void under the inoperative executions, should as a matter of law be referred to the McMaster execution, which seems to have been reached upon a cause of action ante-dating the constitution, and at the time of the sale was lying in the Sheriff's office. It is true there is a class of cases in our reports which holds that the official sale of a sheriff under process which does not give him the power to sell, may, under certain circumstances, be sustained by referring it to any other authority in his office at the time, under which he might have proceeded. It does not seem to me, however, that the circumstances here bring this case necessarily within the rule. The doctrine has arisen out of the policy to sustain sheriff's sales. It proceeds on presumptions contrary to the fact, and in my judgment should not be extended beyond what is absolutely required by the decided cases.

It is not necessary to cite the cases upon the subject, commencing with that of *Gist* v. *McJunkin*, 1 *McM*. 349. It will be found upon examination that in all the cases in which the principle has been applied, one thing has always been considered indispensable, viz. : that the authority in the office to which the sale may be referred must be clear and beyond all doubt, a subsisting living authority, simply waiting to be enforced without further instructions. For obvious reasons the Court will not presume against the fact that the Sheriff acted under a particular authority, or refer his action to it, unless his right to do so was perfect and unmistakable.

The case under consideration is in this respect peculiar. It arises out of the sale of a homestead exemption, and I suppose it is as certainly the policy of the State to support homestead exemptions as to sustain Sheriff's sales. This is certainly the first case of the kind in this State ; and it seems to me that from the very nature of the homestead exemption the Sheriff of his own head had no authority whatever to levy and sell a homestead already assigned without at least express directions from the plaintiff in execution against whom it was assigned. That officer is specially restrained by law from levying and selling the homestead upon pain of being indicted as for a. mis-

demeanor. The amendment of the code then recently passed giving a lien to judgments, declared in terms that this section shall not be so construed as to make final judgments in any case a lien on the real property of a judgment debtor exempt from attachment, levy and sale under the constitution." The Court will not presume that the Sheriff did what it was not his plain duty to do.

We assume it to be true that the execution in the McMaster case as originally issued, contained the usual general authority to the Sheriff to make the money; but the Sheriff in the discharge of his duty had long before levied the execution, and in response the defendant Adams had applied for and had had assigned to him this very homestead under executions, including this one. That assignment was acquiesced in by the exetion creditors and the defendant placed in possession of the homestead. Subsequent to that time the execution had remained dormant in the Sheriff's office, and so far as concerned the rights and duties of the Sheriff, a ministerial officer, was substantially *functus officio*.

It is true that latterly, after the second levy and sale of the homestead under the inoperative executions, this Court in the case of *Bull* v. *Rowe*, 13 *S. C.* 360, decided, that whilst the laws and the right to homestead were general, an exception existed in reference to debts which were contracted before the adoption of the Constitution, and as to these, the provisions of the Constitution and laws allowing homestead were void and might be so declared whenever the fact was made to appear in any proceeding, direct or collateral. But I do not understand that this decision of itself actually on the instant vacated every homestead which had been previously assigned against such debts. It set aside the homestead in the particular case then before the Court, and it also declared a general principle, which the parties in similar cases might avail themselves of. But that result did not follow the decision without some action on the part of those interested in such cases.

The principle declared might include the case of Mr. McMaster, and if so he had the right to take measures to enforce his

execution without regard to the homestead, and if he chose to do so it was his right without a sacrifice of the property to receive upon his execution the full value of the homestead, *as to which his was and is the only effective execution* in existence. But as I understand it all this was for *his own exclusive option and action.* The homestead previously assigned stood against all the world but him, and *prima facie* against him until he proceeded against it. He might or might not avail himself of his right to set aside the homestead. Whether his case was within the exception established by the Supreme Court; and if so, whether he chose to avail himself of it, were matters of himself alone, and neither the Sheriff, nor the plaintiff Agnew, nor any other creditor of Robert Adams, could, to suit his own conscience or interest, determine that matter for him.

It was decided in the case of *Monchat* v. *Brown,* 3 *Rich.,* 117, that even parol instructions to the Sheriff by the plaintiff in execution to "Wait orders" was binding upon the Sheriff, so that a sale under another execution which was in part paid, could not be referred to that execution so as to give life to the sale otherwise void. It does seem to me that the circumstances here, and especially the peculiar nature of a homestead exemption, make a much stronger case of *suspension of the Sheriff's authority,* than the mere verbal "Wait orders" in that case.

After the assignment of homestead, Mr. McMaster never gave the Sheriff orders to proceed under his execution, for the very good reason that at that time it was not known that it could be done, and the question presented is not whether McMaster was estopped from proceeding under his own execution, but whether any other person without his authority could come in collaterally and require the Sheriff to sell under his execution, or have the sale referred to that execution at a subsequent time, so as incidentally to infuse its latent virtue into the title of a purchaser who did not purchase with the least reference to it, but on the contrary under executions which could not possibly touch the homestead.

Under these circumstances I cannot think it was error in the Circuit Judge, when he charged the jury that if McMaster

gave no orders to the Sheriff to proceed under his execution, or in any manner abandoned his action after the assignment of homestead, then such sale could not give the purchaser valid title to the homestead.

New trial granted.